**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

A.D., a minor, through
her mother, MICAELA DAVIS

     *Plaintiff,*

*v.*                    CASE NO. 11-cv-12966

COMMISSIONER OF         DISTRICT JUDGE GEORGE CARAM STEEH
SOCIAL SECURITY,        MAGISTRATE JUDGE CHARLES E. BINDER

     *Defendant.*

_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**[1]

## I.   RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence does not support the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment (docket 28) be **GRANTED**, that Defendant's Motion for Summary Judgment (doc. 29) be **DENIED**, and that the case be **REMANDED** under sentence four of 42 U.S.C. § 405(g).

## II.   REPORT

### A.   Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to the undersigned magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for supplemental security income ("SSI")

---

[1]The format and style of this Report and Recommendation comply with the requirements of Fed. R. Civ. P. 5.2(c)(2)(B). This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

benefits for Plaintiff's minor child. This matter is currently before the Court on cross-motions for summary judgment. (Docs. 28, 29.)

Plaintiff's daughter, A.D., was 13 years of age and in the seventh grade at the time of the most recent administrative hearing. (Transcript, Doc. 25 at 40.) Plaintiff filed the instant claim on September 19, 2007, alleging that A.D.'s disability began on June 1, 1997. (Tr. 69.) The claim was denied at the initial administrative stages. (Tr. 69-73.) In denying the claim, Defendant Commissioner considered obesity, asthma and other hyperalimentation as possible bases of disability. (*Id.*) On November 19, 2009, Plaintiff appeared before Administrative Law Judge ("ALJ") Robert M. Senander, who considered the application for benefits *de novo*. (Tr. 18-31, 35-55.) In a decision dated January 8, 2010, the ALJ found that A.D. was not disabled. (Tr. 31.) Plaintiff requested a review of this decision. (Tr. 13-14.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on November 9, 2010, when the Appeals Council denied Plaintiff's request for review. (Tr. at 5-8.) On March 22, 2013, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision. (Doc. 1.)

## B.     Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions.  Judicial review of the Commissioner's decisions is limited to determining whether her findings are supported by substantial evidence and whether she employed the proper legal standards. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is "more than a scintilla . . . but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc.*

*Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)(quoting *Cutlip v. Sec'y Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports another conclusion. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994)(citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)(en banc)(citations omitted)).

"Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006)("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by

a party")(citations omitted); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

### C.     Governing Law

Disability for purposes of SSI is defined as the:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a).

A child will be considered disabled if he or she has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations . . . ." 42 U.S.C. § 1382c(a)(3)(C)(I). To determine whether a child's impairment results in marked and severe limitations, Social Security Administration ("SSA") regulations prescribe a three-step sequential evaluation process:

> 1.     If a child is doing substantial gainful activity, the child is not disabled and the claim will not be reviewed further.
>
> 2.     If a child is not doing substantial gainful activity, the child's physical or mental impairments will be considered to see if an impairment or combination of impairments is severe. If the child's impairments are not severe, the child is not disabled and the claim will not be reviewed further.
>
> 3.     If the child's impairments are severe, the child's impairment(s) will be reviewed to determine if they meet, medically equal or functionally equal the listings. If the child has such an impairment and it meets the duration requirement, the child will be considered disabled. If the child does not have such impairment(s), or if the duration requirement is not met, the child is not disabled.

20 C.F.R. § 416.924(a). In the third step – namely, whether a child's impairment functionally equals the listings – the Commissioner assesses the functional limitations caused by the child's

impairment(s). *See* 20 C.F.R. § 416.926a(a). A claimant bears the burden of proving that his or her impairment satisfies, or "meets," one of the listed impairments. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir.1995); *see also Hall ex rel. Lee v. Apfel*, 122 F. Supp. 2d 959, 964 (N.D. Ill. 2000) (child's claim). Once a claimant makes such a showing, an irrebuttable presumption of disability arises. *Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir. 2000) (citing 20 C.F.R. §§ 404.1520(d), 416.920(d)).

To "meet" a listed impairment, a child must demonstrate both "A" and "B" criteria. *See* 20 C.F.R. pt. 404, subpt. P, app. 1. "A" criteria are medical findings and "B" criteria "describe impairment-related functional limitations." *Id*. In order to establish disability under the Listings, each requirement of the applicable Listing must be met. *See* 20 C.F.R. § 416.925(d) ("Your impairment(s) cannot meet the criteria of a listing based only on a diagnosis. To meet the requirements of a listing, you must have a medically determinable impairment(s) that satisfies all of the criteria in the listing."); *see also Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Emphasis in original.). If a child's impairments do not meet a listed impairment, they may still be medically or functionally equal in severity and duration to the medical criteria of a listed impairment. *See* 20 C.F.R. § 416.926a(a). A child's impairments "equal" a listed impairment when the child demonstrates a "'marked' limitation[ ] in two domains of functioning or an 'extreme' limitation in one domain." *Id*.

Domain analysis is equivalent to analysis of the "A" and "B" criteria for listed impairments and focuses on "broad areas of functioning intended to capture all of what a child can or cannot

do." 20 C.F.R. § 416.926a(b)(1). The regulations include six domains: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for yourself, and (6) health and physical well-being. *Id*. A "marked" limitation is one which "interferes seriously with [a child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(I). It "is 'more than moderate' but 'less than extreme.'" *Id.*

### D.    ALJ Findings

The ALJ applied the Commissioner's disability analysis described above and found at step one that A.D. was born on May 6, 1996, and therefore was a preschooler[2] on September 19, 2007, the date the application was filed, and is currently an adolescent, and that she had not engaged in substantial gainful activity since September 19, 2007, the application date. (Tr. at 21.) At step two, the ALJ found that A.D.'s asthma and obesity were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that A.D.'s combination of impairments met or equaled one of the listings in the regulations. (Tr. at 21-31.) Therefore, the ALJ found that A.D. was not disabled. (Tr. at 30-31.)

### E.    Administrative Record

A.D. was 13 years old at the time of the hearing. (Tr. 46.)  In the initial application A.D. alleged asthma, with disability since June 1, 1997. At the time of application, A.D. was 5 feet tall and weighed 165 pounds. (Tr. 138.) By the time of the hearing, A.D. was 5 feet 3 inches tall and weighed 219 pounds. (Tr. 46.)

---

[2]As Defendant points out, the ALJ incorrectly noted A.D. was a preschooler when she was a school-age child at the time of application. This, I suggest, is harmless error where the ALJ otherwise conducted the appropriate analysis for a school-age child.

At the time of the November hearing, A.D. was in the 7th grade and attended regular education classes. (Tr. 40.) A.D. testified that she had missed about seven days of the school year, due to her asthma.  (Tr. 40.) A.D. testified that she takes her breathing machine to school each day and uses it about 12 times per week, including when she has gym, right before lunch and right before she goes home. (Tr. 41.) She testified that she uses her emergency inhaler about seven times a day, as needed. (Tr. 42.)

A.D. explained that in gym class, she is able to perform the exercises, but she cannot run a full five laps around the gym; she usually runs around the gym only two or three times and she often uses her inhaler after running. (Tr. 43-45.) A.D.'s mother explained that if A.D. rides her bicycle too long, she ends up coming inside to use the breathing machine. (Tr. 52.)

A.D. testified that she takes Advair twice a day, in addition to other medications. (Tr. 47.) A.D.'s mother testified that A.D. wheezes a lot in her sleep and uses the breathing machine once almost every night between 3:00 and 5:00 a.m. (Tr. 49-50.) A.D.'s mother explained that A.D. is able to bathe and care for her own hair, but A.D. cannot tolerate the heat from the hair dryer. (Tr. 52-53.) She described that her daughter gets along well with others, but she has mood swings and gets angry when she is not feeling well. (Tr. 53.) A.D. brings her homework home and completes it and age-appropriate tasks around the house. (Tr. 53-54.)

The transcript contains medical records dating from October 1998 through 2009. The records show A.D. has primarily treated for asthma. Medical records from as far back as 1999, when A.D. was two years old, note a history of asthma and use of an albuterol nebulizer as needed. (Tr. 177.) A 2001 chest x-ray was normal. (Tr. 194.) A chest x-ray in 2005 showed "[f]indings consistent with viral or reactive airways disease." (Tr. 181.) A chest x-ray in 2006 revealed clear

lungs and "[n]o radiographic evidence of active cardiopulmonary process." (Tr. 182.) A September 2007 chest x-ray was normal. (Tr. 204.)

At an October 2007 hospital admission, diagnostic impressions were status asthmaticus, moderate persistent asthma and allergic rhinitis symptoms. (Tr. 200.) The physician reported that "[i]dentified asthma triggers include changes in weather, upper respiratory infections, exercise and exposure to irritant smells," noting that A.D. "has allergic rhinitis symptoms as well." (Tr. 199.) The records at issue in Plaintiff's appeal include multiple hospital visits for asthma and asthma-related exacerbation, which will be discussed in further detail in the analysis below.

The List of Exhibits at the end of the ALJ's decision contains medical evidence Exhibits 1F through 8F. (Tr. 34.) The hearing transcript shows that the ALJ admitted an Exhibit 9F at the hearing. (Tr. 38.) The record also shows that Exhibits 9F through 14F were provided to the Appeals Council. (Tr. 8-9, 322-35.) These exhibits are relevant to the analysis below and will be discussed more fully therein.

## F.    Analysis and Conclusions

Plaintiff contends that substantial evidence fails to support the findings of the Commissioner. (Doc. 28.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *See McClanahan v. Comm'r of Soc. Sec.,* 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Plaintiff specifically contends that A.D.'s condition meets the requirements of Listing 103.03. (Doc. 28 at 6.) Plaintiff also argues that A.D. functionally equals the Listings, contending that A.D. has an extremely marked limitation, rather than marked limitation, in the area of health and physical well-being. (Doc. 28 at 8.)

**1.     Whether A.D. Meets Listing 103.03**

Plaintiff argues that A.D. meets Listing 103.03B based on the number and severity of asthma attacks that required physician intervention. (Doc. 28 at 6.) Asthma listing 103.03B at 20 C.F.R. Part 404, Subpart P, Appendix 1, requires a diagnosis of asthma with the following:

> B. Attacks (as defined in 3.00C), in spite of prescribed treatment and requiring physician intervention, occurring at least once every 2 months or at least six times a year. Each inpatient hospitalization for longer than 24 hours for control of asthma counts as two attacks, and an evaluation period of at least 12 consecutive months must be used to determine the frequency of attacks . . . . 20 C.F.R. Pt. 404, Subpt. P, App. 1, 103.03B.

Section 3.00C, which defines "attacks," provides the following:

> Episodic respiratory disease. When a respiratory impairment is episodic in nature, as can occur with exacerbations of asthma, cystic fibrosis, bronchiectasis, or chronic asthmatic bronchitis, the frequency and intensity of episodes that occur despite prescribed treatment are often the major criteria for determining the level of impairment. Documentation for these exacerbations should include available hospital, emergency facility and/or physician records indicating the dates of treatment; clinical and laboratory findings on presentation, such as the results of spirometry and arterial blood gas studies (ABGS); the treatment administered; the time period required for treatment; and the clinical response. Attacks of asthma, episodes of bronchitis or pneumonia or hemoptysis (more than blood-streaked sputum), or respiratory failure as referred to in paragraph B of 3.03, 3.04, and 3.07, are defined as prolonged symptomatic episodes lasting one or more days and requiring intensive treatment, such as intravenous bronchodilator or antibiotic administration or prolonged inhalational bronchodilator therapy in a hospital, emergency room or equivalent setting. Hospital admissions are defined as inpatient hospitalizations for longer than 24 hours. The medical evidence must also include information documenting adherence to a prescribed regimen of treatment as well as a description of physical signs. For asthma, the medical evidence should include spirometric results obtained between attacks that document the presence of baseline airflow obstruction. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 3.00C.

In his decision the ALJ concluded that

> On its face, the evidence presents the claimant meeting the criteria for the period beginning September 19, 2007 through September 18, 2008. However, while the records for the treatment the claimant received in September 2007 and October 2007 is (sic) adequately documented (Exhibit 3F), the records for the corresponding dates are not documented as sufficiently. For example, the claimant presented herself to the emergency department on November 15, 2008 (Emergency Department Report, Children's Hospital of Michigan, November 16, 2008). While the record presents symptoms reported, recent treatment, and that the treatment took place over 24 hours, there is no documentation of clinical and laboratory findings on presentation, treatment administered, response treatment, or final assessment (*id.*). Additionally, there is no documentation that the claimant underwent spirometry testing between attacks that document the presence of baseline airflow obstruction as required.

At the hearing, the ALJ referenced a chart that Plaintiff's attorney provided to the ALJ, detailing the dates and length of A.D.'s hospital visits and the ALJ incorporated a similar chart in his decision. (Tr. 22.) The ALJ considered hospital admissions occurring on the following dates: December 1, 2004; August 20, 2005; February 19, 2006; July 30, 2006; September 19, 2007; October 28, 2007; March 24, 2008; April 9, 2008; August 8, 2008; November 12, 2008; November 15, 2008; and July 1, 2009. (Tr. 22.)

As the ALJ pointed out, asthma-related medical treatment for the period beginning September 19, 2007 through September 18, 2008, appears to meet the frequency requirement for a twelve month period. (Tr. 22.) Plaintiff sought treatment for asthma symptoms five times between September 19, 2007 and September 18, 2008. Both the October 2007 event and the April 2008 event may qualify as "hospital admissions" "for longer than 24 hours" and therefore would be counted as two attacks each, totaling seven events during the twelve month period from September 19, 2007 through September 18, 2008. Despite the frequency of these events, the ALJ found that Plaintiff does not meet the listing for asthma because most of the emergency department visits and hospital admissions are inadequately documented. (Tr. 22.) The ALJ determined that,

other than the September 2007 and October 2007 treatment records, the remaining record did not contain information required by Listing 103.03B, including clinical and laboratory findings on presentation, treatment administered, response to treatment or final assessment. (Tr. 199-213)

The instant case presents a confluence of two novel situations. First, the record shows that the ALJ had notice that Plaintiff's attorney had additional hospital records and that the attorney had submitted only "the asthma attacks" from those records, yet the ALJ then based his decision on a <u>lack</u> of documentation. Second, it is unclear from the record which documents were actually before the ALJ and which documents were submitted to the Appeals Council following the ALJ's decision.

With respect to the additional treatment records that were not submitted, the following exchange took place between the ALJ and Plaintiff's attorney at the hearing:

ALJ: . . . Obviously, counsel, you know that I was going to have to go through hospitalizations and ER in great detail and you made a chart, that was great.

ATTY: I did. The records, it's about 300 pages. That's not what I sent you. I just basically took out the asthma attacks from each of  - -

ALJ: Oh, yeah.

ATTY: Okay. So I can send you the whole record.

ALJ: Not if it doesn't apply to the case.

ATTY: Okay.

ALJ: Then I don't need it.

ATTY: Okay.

ALJ: And the other part of it is, the date that we're dealing with in this case is the date of application on Title XVI which is September 19th, '07. So –

11

ATTY: Right.

ALJ: - -  if part of those 300 pages are before that, they're not going to be - -

ATTY: Exactly.

ALJ: - - [INAUDIBLE]

ATTY: So, I did my best to try to simplify - -

ALJ: Make it - -

ATTY: - - it for you.

ALJ: - - easier, right?

ATTY: Yeah.

ALJ: Right. (Tr. 38-39.)

Many Circuits recognize a heightened duty of the ALJ to develop the record where the claimant is not represented by counsel and Sixth Circuit law is not inconsistent with this. *See generally Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1994); *Cutler v. Weinberger*, 516 F.2d 1282, 1286 (2d Cir. 1975); *Lashley v. Sec'ty of Health and Human Servs.*, 708 F.2d 1048, 1051-52 (6th Cir. 1983). Yet even when a claimant is represented, as here, an ALJ has a "basic obligation to develop a full and fair record." *Kidd v. Comm'r of Soc. Sec.*, 283 Fed. Appx. 336, 344 (6th Cir. 2008).

Those cases in which an ALJ was informed of gaps in the record or the existence of additional records provide guidance.[3] "Although the Court is aware that 'how much evidence to gather is a subject on which [courts] generally respect the Secretary's reasoned judgment,' . . . the

---

[3]Plaintiff appeared before the ALJ twice via video conference. (Tr. 37, 58.) At the first appearance, Plaintiff was advised of her right to obtain counsel, and she did so prior to the disability hearing. (Tr. 37, 56-66.)

12

Court does not read this proposition broadly to permit an ALJ to completely disregard known sources of medical evidence." *Vaile v. Chater*, 916 F.Supp. 821, 830 (N.D.Ill. 1996).

The exchange between the ALJ and Plaintiff's attorney indicates that the ALJ had notice that the attorney had provided only portions, if any, of the hospital records. Such cherry picking of non-duplicative medical records is to be discouraged, even under the guise of being helpful to the ALJ. However, when non-duplicative medical records exist for the time period at issue and are offered by a claimant or her counsel, surely it is up to the Commissioner to determine the relevance and weight of such evidence, which cannot be done when the evidence was never presented in the first place.  As a result, in this instance, I am left with no other conclusion but that the ALJ has failed to adequately develop the record.

With respect to Exhibits 9F through 14F, it is not clear from the record which exhibits were actually before the ALJ at the time he made his decision and which exhibits, if any, were solely provided to the Appeals Council. At the hearing, the ALJ admitted Exhibit 9F into the record stating, "And 9-F is what's coming across the fax machine now, which I'm about to read in a second and then we'll get started." (Tr. 38.) However, Exhibit 9F is not included in the List of Exhibits with the ALJ's decision, the ALJ's decision does not reference an Exhibit 9F in the decision and there is no further indication as to which documents comprise the ALJ's Exhibit 9F. (Tr. 34, 38.) The Appeals Council Exhibit List shows that Exhibits 9F through 14F were submitted to the Appeals Council. (Tr. 8, 322-35.) Adding further confusion is the ALJ's citation to an "Emergency Department Report, Children's Hospital of Michigan, November 16, 2008," which appears as the Appeals Council's Exhibit 13F. (Tr. 8, 22.)

The "court is confined to review evidence that was available to the Secretary, and to determine whether the decision of the Secretary is supported by substantial evidence." *Wyatt v.*

13

*Sec'y of Health and Human Servs.*, 974 F.2d 680, 685 (6th Cir. 1992) (*citing Richardson*, 402 U.S. at 401).  The court may still remand the case to the ALJ to consider this additional evidence but only upon a showing that the evidence is new and material and "that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). This is referred to as a "sentence six remand" under 42 U.S.C. § 405(g). *See Delgado v. Comm'r of Soc. Sec.*, 30 Fed. Appx. 542, 549 (6th Cir. 2002).  The party seeking remand has the burden of showing that it is warranted. *See Sizemore v. Sec'y of Health and Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988). "In order for the claimant to satisfy this burden of proof as to materiality, he must demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Id.* (*citing Carroll v. Califano*, 619 F.2d 1157, 1162 (6th Cir. 1980)); *see also Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993) ("Where a party presents new evidence on appeal, this court can remand for further consideration of the evidence only where *the party seeking remand* shows that the new evidence is material.")(emphasis added)(citations omitted).

This case on its face does not raise the issue of a remand pursuant to sentence six and Plaintiff has not requested a sentence six remand. Instead, there is a substantial discrepancy in the record as to which of these documents were actually considered by the ALJ and admitted to the record at the time of the decision and those which appeared for the first time at the Appeals Council level. Further, even if Exhibits 9F through 14F were before the ALJ, these few records are incomplete. It appears that Plaintiff's attorney has submitted excerpted records that indicate the date and fact of an emergency department visit or hospital admission, yet she has deemed irrelevant and failed to provide the supporting documentation for these visits and others.

Even if the evidence in question is considered pursuant to a sentence six analysis, I suggest that the case should be remanded. Plaintiff argues that at least one of the exhibits, 11F, contains some of the information the ALJ noted was missing, such as the reason for admission, the admission date and the discharge date. (Tr. 331.) What is baffling is why this exhibit is so obviously incomplete. It defies logic that Plaintiff's attorney would have submitted only the first page of an Emergency Department Report. (Tr. 331.) The hospital printing information at the bottom of the page indicates that this is "Page 3 of 30." (Tr. 331.) Similarly, Exhibit 12F, another single-page exhibit, contains the hospital printing information at the bottom indicating that it is "Page 6 of 154." (Tr. 332.) The two-page Exhibit 13F contains pages 3 and 22 of 30. (Tr. 333, 334.) Exhibit 14F is a single-page chart summarizing A.D.'s asthma treatments. (Tr. 335.) An attorney's summary of medical evidence is not actual medical evidence. The underlying records are the evidence upon which an ALJ may base his decision.

Exhibit 10F is an April 2008 visit to Children's Hospital which contains some of the very documentation that the ALJ deemed missing from the records, including treatment and response to treatment. (Tr. 325-30.) These few pages also reference the existence of the spirometry testing that ALJ mentioned as a basis for denial. (Tr. 22.) The ALJ noted that the record showed no documentation of spirometry testing, yet the April 2008 consulting report provides, "She was seen in the allergy clinic in January, 2008. . . . She had spirometry done that showed moderate obstruction." (Tr. 329.) Further, while at least two of the Children's Hospital visits reference treatment at Henry Ford Hospital in the days immediately preceding, there are no supporting records from those visits. For example, the November 15, 2008 record noted that A.D. was "seen at Henry Ford Hospital three days ago, . . . ." (Tr. 332.) The September 19, 2007 Children's Hospital Report notes that A.D. "is being transferred from Henry Ford ED with complaints that

she has been wheezing since 6 p.m. yesterday, i.e., over the past 8 hours or so." (Tr. 202.) It raises an issue on remand whether an additional day at a different hospital, resulting in a transfer of the patient between the two institutions for the same complaint may have resulted in a hospital admission longer than 24 hours, to be counted as two asthma attacks pursuant to Listing 103.03B.

The full documentation that was available for all the treatment events during the relevant time period should have been submitted to the ALJ prior to the hearing. From the record, it appears that much of the documentation was not submitted, either to the Appeals Council or the ALJ. The records are relevant to Plaintiff's condition during the time period at issue. In some instances the record suggests the existence of the very information that the ALJ found lacking. Therefore the documentation is material.

Finally, a sentence six remand requires a showing that "there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). Plaintiff by her attorney should have simply and timely submitted all medical records for the time period in question. However, where Plaintiff's attorney questioned the submission of 300 pages of hospital records and relied in part on the ALJ's guidance in withholding them, there is good cause for Plaintiff's failure to incorporate the records in the prior proceeding. The ALJ erred in both failing to develop the record and in encouraging Plaintiff's attorney to curate the submission of medical records from the relevant time period.

I further suggest that this recommendation does not run counter to those cases which hold that an ALJ has discretion to accept post-hearing evidence and "reopen the hearing at any time before he or she mails a notice of the decision in order to receive new and material evidence." 20 C.F.R. § 416.1444; *e.g., Hurt v. Astrue*, 2011 WL 3682770 at *5-6 (S.D.Ohio Aug. 23, 2011)(citing *McClesky v. Comm'r of Soc. Sec.*, 606 F.3d 351 (7th Cir. 2010)("The decision

16

whether to reopen the hearing to receive "new and material evidence" is indeed discretionary, . . . ." *Id.* at 355.)). In the instant case, the evidence was offered during the hearing, not after, and prior to closing the record.

When the complete documentation is considered, it may very well be that some of the asthma-related medical events do not meet the criteria of Listing 103.03B. For example, compliance with required prescribed medication must be considered. At the October 28, 2007 hospital admission, Jenny Montejo, M.D., reported that A.D. "was admitted the last time in September 2007 and was prescribed Advair 250/50 twice a day and Nasonex one spray in each nostril once a day. But she admits not to using these medications on a regular basis as she forgets to take it most of the time." (Tr. 199.) A July 2009 Emergency Department Report notes that A.D. "ran out of her medication at home." (Tr. 333.) Defendant also argues that Exhibit 10F notes that Plaintiff missed approximately one Advair spray per week, having been prescribed two sprays per day. (Tr. 329.) These are issues to be considered on remand.

For all these reasons, I suggest that the ALJ did not adequately develop the record in this case. His decision that Plaintiff did not equal a listing is not supported by substantial evidence. The case should be remanded pursuant to sentence four of 42 U.S.C. § 405(g) for development of the record, including obtaining and considering all of A.D.'s medical records from the time period at issue, including the Children's Hospital and Henry Ford Hospital records and the January 2008 spirometry testing.

## 2.   Whether A.D. Functionally Equals a Listing

Next, Plaintiff argues that the ALJ erred in finding that A.D. does not have an impairment or combination of impairments that functionally equals the Listings. Plaintiff argues that A.D. has extreme limitations in the domain of health and physical well-being. "Functional equivalence is

determined by 20 C.F.R. § 416.926a, which requires a 'marked' impairment in two 'domains' or an 'extreme' impairment in one domain." *Kelly v. Comm'r of Soc. Sec.,* 314 F. App'x 827, 829 (6th Cir. 2009) (quoting 20 C.F.R. § 416.926a(d)). An extreme limitation is defined as one that "interferes very seriously with [the] ability to independently initiate, sustain, or complete activities" and that is "more than marked." 20 C.F.R. § 416.926a(e)(3)(I).

Here, the ALJ concluded that A.D. has no limitation in acquiring and using information, no limitation in attending and completing tasks, less than marked limitation in interacting and relating with others, less than marked limitation in moving about and manipulating objects, less than marked limitation in the ability to care for herself, and a marked limitation in health and physical well-being. (Tr.  25-30.)

Only one functional domain is at issue: Health and Physical Well-Being. As noted and analyzed by the ALJ,  the regulations provide examples of limited functioning in the health and physical well-being domain. (Tr. 30.) They include: (i) "generalized symptoms, such as weakness, dizziness, agitation (e.g., excitability), lethargy (e.g., fatigue or loss of energy or stamina), or psychomotor retardation because of your impairment(s)"; (ii) "somatic complaints related to your impairment(s) (e.g., seizure or convulsive activity, headaches, incontinence, recurrent infections, allergies, changes in weight or eating habits, stomach discomfort, nausea, headaches, or insomnia)"; (iii) "limitations in your physical functioning because of your treatment (e.g., chemotherapy, multiple surgeries, chelation, pulmonary cleansing, or nebulizer treatments); (iv) "exacerbations from one impairment or a combination of impairments that interfere with your physical functioning"; (v) "[y]ou are medically fragile and need intensive medical care to maintain your level of health and physical well-being." 20 C.F.R. § 416.926a(l)(4).

The regulations give some examples of what may constitute a "marked" limitation in the health and physical well-being domain:

> [W]e may also consider you to have a "marked" limitation if you are frequently ill because of your impairment(s) or have frequent exacerbations of your impairment(s) that result in significant, documented symptoms or signs. For purposes of this domain, "frequent (sic) means that you have episodes of illness or exacerbations that occur on an average of 3 times a year, or once every 4 months, each lasting 2 weeks or more. We may also find that you have a "marked" limitation if you have episodes that occur more often than 3 times in a year or once every 4 months but do not last for 2 weeks, or occur less often than an average of 3 times a year or once every 4 months but last longer than 2 weeks, if the overall effect (based on the length of the episode(s) or its frequency) is equivalent in severity. 20 C.F.R. § 416.926a(e)(2)(iv).

An "extreme" limitation in the health and physical well being domain is described as being "frequently ill because of your impairment(s) or hav[ing] frequent exacerbations of your impairment(s) that result in significant, documented symptoms or signs substantially in excess of the requirements for showing a "marked" limitation in paragraph (e)(2)(iv) of this section." 20 C.F.R. § 416.926a(e)(3)(iv). The regulations go on to point out that if such episodes or exacerbations are rated as "extreme" pursuant to this definition, then the impairment "should meet or medically equal the requirements of a listing in most cases." 20 C.F.R. § 416.926a(e)(2)(iv).

Based on the record as it exists now, substantial evidence supports the ALJ's findings. A.D.'s hospitalizations and treatments do not meet the description and frequency set forth in the regulations for an "extreme" limitation in health and physical well-being. With the addition of the supporting treatment records, as discussed above, the ALJ should make a new determination of limitations in health and physical well-being at step three if necessary.

The ALJ's findings at step three are otherwise supported by the opinion of medical consultant Delois D. Daniels, M.D., who completed Case Analysis and Childhood Disability Evaluation Forms dated May 16, 2008. (Tr. 218-25.) Dr. Daniels considered Plaintiff's asthma and

19

obesity. (Tr. 220.) Dr. Daniels opined that Plaintiff has no limitations in the following functional domains: acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, and caring for herself. (Tr. 222-23.) Dr. Daniels found that Plaintiff had less than marked limitations in the domain of health and physical well-being. (Tr. 223.)

As the ALJ noted in his analysis, A.D.'s participation in physical activities is disrupted by her need for treatment and inability to "participate as long or as intensely as her friends can." (Tr. 30.) However, as both A.D. and her mother's testimony shows, A.D. is able to participate in the activities in which her friends participate with only some limitation and by using her inhaler prior to play[4]. (Tr. 215.) While the ALJ's findings regarding Plaintiff's limitations in most of the functional domains is supported by substantial evidence, on remand, the ALJ must make a new determination of limitations in health and physical well-being based on the additional evidence that will be obtained.

### 3.   Conclusion

For the reasons set forth above, I suggest that Plaintiff's motion for summary judgment be granted, that Defendant's motion for summary judgment be denied, and that the case be remanded under sentence four of 42 U.S.C. § 405(g).

## III.   <u>REVIEW</u>

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28

---

[4] Noticeably absent from this child's SSI case are school records, which may have provided some evidence of A.D.'s absences, the ability or inability to participate in physical education at school and may have supported or refuted the allegation that A.D. uses her nebulizer or breathing machine during the school day.

U.S.C. § 636(b)(1).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation.  *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97.  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

s/ Charles E Binder

CHARLES E. BINDER
United States Magistrate Judge

Dated: August 19, 2014

21